IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY,: <br> Plaintiff, : <br> : <br> vs. : <br> : <br> HEFFLER, RADETICH & SAITTA, LLP, : <br> Defendant. : | CIVIL ACTION <br><br> NO.  11-4753 |

DuBois, J.                                                                                                      January 28, 2013

**M E M O R A N D U M**

I.      **BACKGROUND**

This case arises out of a dispute over insurance coverage.  Defendant Heffler, Radetich & Saitta, L.L.P. ("Heffler") administers class action settlement funds, and was insured by plaintiff CAMICO Mutual Insurance Company ("CAMICO").  Heffler was sued by a class member who alleged that one of the firm's employees misappropriated class action settlement proceeds.  Heffler independently retained Conrad O'Brien P.C. ("O'Brien firm") to defend in that action, captioned Oetting v. Heffler, Radetich & Saitta, LLP ("Oetting action").

CAMICO has thus far paid for the O'Brien firm's defense in the Oetting action.  In the present action CAMICO seeks, inter alia, a declaratory judgment stating that its coverage obligation arising from the misappropriation is limited to $100,000.

CAMICO now moves to compel production by Heffler of numerous documents related to the Oetting action.  Heffler has refused to turn over these documents in discovery on the grounds that they are subject to attorney-client privilege.  Specifically, Heffler claims that these documents were created in communication with the O'Brien firm in regard to the defense in the Oetting action.

1

CAMICO does not contest Heffler's claim that the documents at issue are subject to attorney-client privilege. Rather, CAMICO asserts that an exception to the privilege applies because it shared a common interest with Heffler regarding the defense of the Oetting action. (Mot. at 3.)

## II.  LEGAL STANDARD

"As the claims and defenses in issue in this action arise under state law, Federal Rules of Evidence 501 and 1101(c) provide that [the Court] should apply state law in determining the extent and scope of the attorney-client privilege." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 861-62 (3d Cir. 1994). The parties do not dispute that the privilege rules of the Commonwealth of Pennsylvania apply to this case. Unfortunately, the Pennsylvania Supreme Court has not addressed the issue before the Court, namely when the "common interest" or "co-client" exceptions to attorney-client privilege apply.

The Court is therefore charged with predicting how the state Supreme Court would rule regarding the claimed exception from attorney-client privilege. "When predicting how the state's highest court would resolve the issue, we must take into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006).

The Third Circuit has described certain relevant exceptions to attorney-client privilege in In re Teleglobe Communications Corp, 493 F.3d 345 (3d Cir. 2007). Although the opinion applied Delaware law on some issues, in addressing exceptions to attorney-client privilege the court looked to case law from numerous jurisdictions, the Restatement (Third) of the Law Governing Lawyers, and general principles animating the doctrines at issue. Id. at 362-66.

Indeed, "[w]hile Teleglobe was a case applying Delaware law, its discussion of the common-interest doctrine was not so limited. The Third Circuit engaged in a contemplative analysis of the purpose, history, and requirements of the common-interest doctrine, without much reference to Delaware law at all . . . In fact, Teleglobe has been cited by courts around the country as a leading opinion on the common-interest doctrine." Hoffmann-La Roche, Inc. v. Roxane Laboratories, Inc., Civ. No. 09-6335, 2011 WL 1792791, at *6 n.6 (D.N.J. May 11, 2011). Accordingly, the Court cites Teleglobe as persuasive authority in this case.

The Teleglobe court described two distinct exceptions to attorney-client privilege, the "common interest" exception and the "co-client" exception. The Court will address each exception in turn.

First, the "'common interest' (also known as 'community of interest')" exception to attorney-client privilege which "applies when clients are represented by separate counsel." Teleglobe, 493 F.3d at 365. That is, where separate clients retain different attorneys who share information with each other pursuant to a common legal interest, such information is not privileged as between those clients. Id. at 365-66.

Pennsylvania state courts have held that under the "common interest" exception, separate counsel for different clients is required. See In re Condemnation by City of Philadelphia in 16.2626 Acre Area, 981 A.2d 391, 397-98 (Pa. Commw. Ct. 2009) (noting that the common interest exception arises where, "co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts over contingent or subsidiary issues in the case. To avoid duplication of efforts, such defendants should be able to pool their resources on matters of common interest.") (quoting Young v. Presbyterian Homes, Inc., 50 Pa. D. & C.4th 190, 198 (Pa. Com. Pl. 2001)).

CAMICO does not claim that it had separate counsel who shared information with the O'Brien firm. Accordingly, the "common interest" exception is not applicable in this case.

Second, the Teleglobe court addressed the "co-client" exception to attorney-client privilege, which operates where two or more clients share the same attorney, such that "[w]hen former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." Teleglobe, 493 F.3d at 366; see also Tracy v. Tracy, 377 Pa. 420, 424 (1954) (noting that attorney-client privilege does not "apply if the attorney represented both parties to the transaction, in which case no communications in relation to the common business are privileged in favor or against either, but only against a common adversary."). CAMICO argues that the O'Brien firm "represent[ed] the joint interests of Heffler and CAMICO with respect to defense of the Oetting Action," and that as such, the documents at issue are not privileged with respect to CAMICO. (Repl. at 12.) The application of this exception thus turns on whether CAMICO was a co-client of the O'Brien firm in the Oetting action.

There are two ways by which CAMICO may be considered a co-client with Heffler. First, the parties would be co-clients if, by virtue of an absolute rule, insured and insurer are always considered co-clients whenever the insurer pays for the defense of the insured. Second, even if an absolute rule does not apply, the parties may be co-clients if the facts of the case demonstrate that a joint representation occurred. The Court addresses these issues in turn.

### III. DISCUSSION

A. Absolute Rule

The Pennsylvania Supreme Court has not addressed whether an insurance carrier is always a co-client with its insured when the carrier funds the defense of the insured. Indeed, this

question continues to be the subject of debate among scholars and courts.  See, e.g., Anthony P. Picadio & Bridget M. Gillespie, Norton on Insurance Coverage in Pennsylvania § 6.C (2d ed. 2006) (comparing the "single client" view to the "dual client" view).  As such, lower state and federal courts interpreting Pennsylvania law have answered this question differently.

Certain federal courts interpreting Pennsylvania law have held when an insurer retains an attorney to defend an insured in an underlying action, that insurer is a co-client with its insured.  See F.P. Woll & Co. v. Valiant Ins. Co., Civ. No. 99-0465, 2003 WL 23281280, at *3 (E.D. Pa. Feb. 12, 2003); Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co., 161 F.R.D. 293, 295 (E.D. Pa. 1995) (finding that where insurer agreed to defend underlying action, the insured "ha[d] no reasonable expectation of privilege" as against the insurer).  However, other federal courts have held to the contrary.  See, e.g., Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452, 454 (M.D. Pa. 1997) ("When an insurer retains an attorney to represent an insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not the insurer."); Point Pleasant Canoe Rental, Inc. v. Tinicum Twp., 110 F.R.D. 166, 170 (E.D. Pa. 1986).

The Pennsylvania state appellate courts which have considered this issue agree that a co-client relationship does not exist simply by virtue of the insurer-insured relationship.[1]  The Pennsylvania Superior Court, in a recent decision, Eckman v. Erie Ins. Exchange, declined to find a co-client relationship between insurer and insured.  21 A.3d 1203, 1209 (Pa. Super. Ct. 2011).  In that case, insured plaintiff sought to have defendant insurer provide her with counsel of her choice, arguing that "any attorney selected by" the insurer to represent her would have a

---

[1] Prior to Eckman state trial courts were in disagreement over this issue.  Compare Graziani v. OneBeacon Ins. Inc., 2007 WL 5077409, at *247 (Pa. Com. Pl. Nov. 21, 2007) ("The insured and the insurance company are both clients of the attorney until such time as a conflict arises.") with Tower Investments Inc. v. Rawle & Henderson LLP, 2008 WL 1923170, at *541 (Pa. Com. Pl. Mar. 3, 2008) ("When a liability insurer retains counsel to defend an insured, the insured is considered the client.").

conflict of interest because of the attorney's inherent obligations to the insurer. Id. The court held that no conflict existed per se, in "circumstances in which a lawyer may represent a client and be paid by a third party." Id. Without evidence that "any or all attorneys paid by an insurer would breach their ethical obligations to the insured/client," plaintiff's request that the insurer provide her with counsel of her choice was rejected. Id. In support of its conclusion, the Eckman court cited Pennsylvania Rule of Professional Conduct 1.8 cmt. 11, which notes that, "Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company) *or* a co-client . . . ." (emphasis added). The Eckman opinion thus rejected an absolute rule that the insured is always a co-client with the insurer when the insurer funds the defense of the insured.

The Restatement (Third) of the Law Governing Lawyers also rejects an absolute rule. The Restatement discusses representations in the insurer-insured context, noting that, "[t]he insurer is not, simply by the fact that it designates the lawyer, a client of the lawyer. Whether a client-lawyer relationship also exists between the lawyer and the insurer is determined under § 14." Restatement (Third) of Law Governing Lawyers § 134 cmt. f. § 14 of the Restatement establishes the factors used to determine whether a client-lawyer relationship arises, including when: "(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services . . . ." See also Charles Silver & Kent Syverud, The Professional Responsibilities of Insurance Defense Lawyers, 45 Duke L.J. 255, 275 (1995) ("[A]n attorney-client relationship . . . arises by

agreement. A defense lawyer who undertakes to represent both a company and an insured has two clients . . . A defense lawyer who undertakes to represent only an insured has one client. . . .").

Teleglobe provides additional support for the position that insured and insurer are not considered co-clients whenever the insurer pays for the defense of the insured. See also, Alit (No. 1) Ltd. v. Brooks Ins. Agency, Civ. No. 10-2403, 2012 WL 959332 (D.N.J. Mar. 21, 2012) (citing Teleglobe on relationship between insured and insurer). In Teleglobe, the court examined whether parent and subsidiary companies were joint clients for the purpose of an underlying action. Teleglobe, 493 F.3d at 380. The court held that the two entities were not co-clients simply because of their corporate relationship. Id. Rather, the court found that "a wide variety of circumstances are relevant to the determination of whether two or more parties intend to create a joint-client relationship, particularly how the parties interact with the joint attorneys and with each other." Id. at 363. Further, "[c]o-client representations must . . . be distinguished from situations in which a lawyer represents a single client, but another person with allied interests cooperates with the client and the client's lawyer." Id. at 362 (quoting Restatement (Third) of the Law Governing Lawyers § 75 cmt. c). Accordingly, the Teleglobe court remanded the case on the ground that further fact finding was necessary to determine whether the parties had engaged in a joint representation. Id. at 380; see also United Coal Companies v. Powell Const. Co., 839 F.2d 958, 965 (3d Cir. 1988) (applying Pennsylvania law in holding that, to determine the "client status" of insurers, "[t]he key is whether the person asserting the privilege had a professional consultation with an attorney, who acts or advises as such.")

7

The Court concludes, in line with Eckman, the Restatement (Third) of the Law Governing Lawyers, and Teleglobe, that where an insurer funds the defense of its insured, the insurer may be, but is not always, a co-client of the insured.

B.   Joint Representation in this Case

The conclusion that an insurer which funds the defense of an insured is not uniformly considered a co-client with an insured does not preclude the possibility of a co-client relationship in this case. That is, even though an absolute rule does not apply, if the O'Brien firm in fact conducted a joint representation of Heffler and CAMICO in the Oetting action, the documents at issue relating to that action would not be privileged as to CAMICO. The Court therefore examines the "circumstances . . . relevant to the determination of whether two or more parties intend to create a joint-client relationship, particularly how the parties interact with the joint attorneys and with each other." See Teleglobe, 493 F.3d at 363.

On the current state of the record, the Court concludes that the O'Brien firm did not conduct a joint representation. Accordingly, CAMICO is not a co-client of Heffler in the Oetting action, and Heffler may therefore refuse to turn over the privileged documents at issue. See Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 418 (D. Del. 1992) (holding that the rationale supporting the co-client exception "simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials.")

Heffler presented evidence which establishes that no joint representation occurred in this case. Notably, Heffler independently retained the O'Brien firm in 2008 in litigation connected to its employee's misconduct. In her Declaration, Patricia M. Hamill of the O'Brien firm states that "Conrad O'Brien is legal counsel to Heffler . . . To my knowledge, and based on a reasonable

8

review of the firm's records, Conrad O'Brien has never served as legal counsel to CAMICO." (Resp. Ex. B, at ¶ 3, 7.)

Further, a letter dated June 13, 2008 from Patricia Hamill of the O'Brien firm to CAMICO states, "We represent Heffler Radetich & Saitta LLP . . . We are writing to notify you . . . of a potential claim against Heffler that may implicate coverage in the above insurance policy held with CAMICO Mutual Insurance Company." (Resp. Ex. 3, at 1.) The letter does not support any notion of a joint representation with CAMICO going forward. (Id. at 2.) CAMICO did not respond to this notice of a potential claim for nine months. (Resp. at 4.)

Finally, in a letter dated July 6, 2011, Mark Aubrey, a claims specialist at CAMICO, wrote to Heffler, "It is our understanding that you have already selected counsel of your choice through the engagement of attorney Patricia M. Hamill and the law firm of Conrad O'Brien. We will provide Ms. Hamill with our litigation guidelines to assist her firm in providing CAMICO with information regarding the defense of the Claim." (Resp. Ex. 7, at 10.) The letter further references the O'Brien firm as "independent counsel" three times, distinguishing such "independent counsel" from attorneys which have been retained by CAMICO in the past. (Id.)

CAMICO states that it has "participated in the defense from the outset of the Claim . . . ." (Repl. at 12.) However, no evidence was offered in support of this alleged participation by CAMICO in a joint representation. CAMICO argues that the Mark Aubrey letter of July 6, 2011 is consistent with a joint defense, in that Patricia Hamill was to provide "CAMICO information regarding the defense of the Claim." (Resp. Ex. 7, at 10.) This might be so but the argument is rejected because CAMICO alleged no facts with respect to what information, if any, was provided to CAMICO by the O'Brien firm. Finally, CAMICO asserts that it shares a "joint

9

interest" with Heffler regarding the outcome of the Oetting action.  The Court concludes that such a shared interest, without more, does not create a co-client relationship.  (Mot. at 4.)

## IV.     CONCLUSION

Defendant's uncontroverted evidence establishes that the O'Brien firm has represented only Heffler in the Oetting action.  As such, CAMICO does not satisfy the "co-client" exception to attorney-client privilege, and the Motion to compel documents subject to the attorney client privilege is denied.  An appropriate order follows.